181 P.2d 189

### BLOXHAM v. ROBINSON et al.
### No. 7338.

Supreme Court of Idaho.
May 24, 1947.

Jones, Pomeroy & Jones, of Pocatello, for appellants.

A. A. Merrill, of Idaho Falls, for respondent.

HOLDEN, Justice.

B. H. Robinson, Leavitt Taylor and D. A. Robinson, copartners, doing business under the firm name and style of "Arimo Ranches", were the owners of a tract of approximately 260 acres of farm lands located near Arimo in Bannock County, Idaho. December 15, 1944, Arimo Ranches leased

the farm lands for the cropping season beginning February 1, 1945, to Darwin O. Bloxham and Dewane Bloxham, brothers and copartners. The lease was on a crop share basis. Thereafter, towit, July 23rd, 1945, the following instrument was executed and delivered.

"Memorandum of Purchase ·

Arimo Ranches of Arimo, Idaho agrees to buy and Darwin Bloxham of Arimo, Idaho agrees to sell one thousand sacks of potatoes for the price of one dollar twenty cents (1.20) per sack at the time said potatoes are dug from property of the Arimo Ranches on or about September 1945.

Said weight shall be determined in truck loads weighed at Arimo, Idaho, as said potatoes are dug from the field and before being placed in potato cellar and shall be measured at the rate of one hundred pounds per sack. Said payment shall be made as follows $200 at time of execution of this memorandum, receipt of which is hereby acknowledged by the seller and the balance within reasonable period after the digging of said potatoes from the field has been completed. Said potatoes shall be accepted in the cellar of the Arimo Ranches and shall be delivered to the cellar by the seller.

>                     Arimo  Ranches
>     (Signed)   By B. H. Robinson
>                     Buyer
>     (Signed)   Darwin  Bloxham
>                     Seller"

At or about the time the above quoted instrument was executed, serious differences having arisen between the brothers, Darwin O. Bloxham and Dewane Bloxham, Darwin O. Bloxham retired from the partnership venture, involving the leasing and operation of the above mentioned farm lands, the circumstances surrounding the withdrawal being in dispute, respondent Darwin O. Bloxham claiming appellant B. H. Robinson agreed to sign the contract by the terms of which he agreed to sell his interest in the above mentioned lease or to become responsible for the payment of the purchase price of that interest. The contract follows:

"July 23, 1945

The undersigned Darwin Bloxham agrees to sell and the undersigned Dewane Bloxham agrees to buy all of the interests of the said Darwin Bloxham in and to that certain contract with Arimo Ranches covering the growing of potatoes on property of Arimo Ranches for the current year.

Darwin Bloxham agrees that he will convey any and all interest in and to said crop and any and all equity he and his heirs and assigns have or may have in said crop or contract.

Dewane Bloxham agrees that he will pay the said Darwin as follows: $200.00 on signing of this contract, receipt of which is hereby acknowledged; $300 on or before August 1, 1945; $400 to be paid to Arimo Ranches to release mortgage held by said Arimo Ranches on a tractor owned by said

Darwin Bloxham; $75 rental payable by said Darwin Bloxham to Arimo Ranches, said rental being on a home occupied by said Darwin and the balance of $1565.00 payable on or before October 1, 1945. Said Dewane agrees further that he will assume and pay accrued bills and expenses incurred by them jointly in operating the said contract to date.

> (Signed)  Dewane Bloxham
> Buyer
> (Signed)  Darwin Bloxham
> Seller"

December 7, 1945, this action was commenced to recover the amount respondent claimed to be due him, towit, $1565.00. In his complaint, and so far as pertinent here, respondent alleged:

"That on or about the 22nd day of July, 1945, in Bannock County, Idaho, and at the special instance and request of the defendants, the plaintiff sold and thereafter delivered to the defendants, approximately 130,400 pounds of Idaho Russett potatoes at an agreed price of $1.20 per hundred pounds, field run, for which the defendants agreed to pay $1565.00; that thereafter, to-wit during the month of October, 1945, the said defendants took possession of said potatoes and have failed, neglected and refused to pay the plaintiff therefor."

"That there is now justly due, owing and unpaid from the defendants to the plaintiff, the sum of $1565.00, together with interest thereon at the rate of 6 per cent per annum from and after the 22nd day of July, 1945."

And, insofar as pertinent on this appeal, appellants answered and in, substance, alleged: That "important differences" had arisen between the Bloxhams; that the Bloxham brothers advised appellant B. H. Robinson "they desired to separate as partners;" that respondent requested "that he be released from the Memorandum of Purchase mentioned herein (the execution and delivery of which appellants admitted), provided, that the said Dewane Bloxham would purchase his (respondent's) interest in said partnership, particularly the potato crops that he had planted. That thereafter on the same day the plaintiff (respondent) and Dewane Bloxham entered into" the above quoted contract dated July 23, 1945, pleaded in haec verba by appellant; appellants further pleaded that at the time the last above quoted contract was executed it was mutually agreed between them and respondent that the said Memorandum of Purchase be, and that it was, "mutually cancelled and held for naught."

The pleading by appellants of the above quoted contract covering an alleged sale by respondent of his interest in the Bloxham partnership and potatoes, as well as the alleged cancellation of the Memorandum of Purchase, constituted new matter in avoidance, which, under Sec. 5-812, I.C.A., is deemed to be controverted by respondent. Thus, appellants themselves brought into the case the issues as to whether a cancellation of the Memorandum of Purchase was, in fact, mutually agreed up-

372

on between respondent and appellants, and if so, the consideration for such cancellation; also, and in connection with that, whether the consideration was, as claimed by respondent, that· appellants would sign the agreement of July 23, 1945, or become responsible for the purchase price of respondent's interest in the Bloxham partnership and potatoes, or just what the understanding or consideration was. And by bringing these new issues into the case, appellants opened the door to the admission of evidence showing, or tending to show, what the actual facts were, concerning these new and materially important issues.

On the trial, however, when respondent started to prove what the facts and circumstances were, the objection was made "that such contract (dated July 23, 1945, pleaded by appellants, as aforesaid), should be introduced and then we can see what the oral features are". Whereupon respondent offered, and the trial court admitted, the contract in evidence. Respondent then resumed submission of proof of such facts and circumstances. Resuming, respondent was asked: "Q. When you entered into plaintiff's Exhibit 'c' and 'd',· [contract dated July 23, 1945, Exhibit D being a copy of Exhibit C], which are the same contract, was there a conversation at that time relative to the contents in the contract and relative to the contents that are in the contract?"

While the question is not clear or definite, it is apparent that what respondent was trying to show by it was, that at the time the contract was executed there were oral conversations and statements by which, respondent contended, it was agreed, or understood, appellants would sign the contract or become responsible to respondent for the payment to him of his interest in the Bloxham partnership and potatoes. And that that was the trial court's understanding appears from a statement made by the court, concerning the question, as will presently appear. And, further, that that was the purpose of the question is also borne out by the examination which immediately followed. Of course, it must be conceded the purpose of the question is not clear or definite; that it is difficult to understand just what respondent desired to prove, but appellants did not object to the question on the ground of lack of clarity. Instead, counsel for appellants simply remarked: "If the court please, that is clearly inadmissible and outside of the issues".

The court made no ruling, it being near the noon hour. On reconvening in the afternoon the court said: "The court: I think I will let or permit you to go into the matter of these oral conversations or statements."

Respondent then testified fully and at great length concerning the new issues so brought into the case, without objection, excepting to one question, it being objected that such question „was "leading and calls for a conclusion." The court sustained the objection, and the examination was continued.

We come now to appellants' specification of errors. In none (5) are the particulars pointed out in which the trial court is alleged to have erred. In Louk v. Patton, 58 Idaho 334, 343, 73 P.2d 949, 953 we said: "It has been uniformly held by this court that it will not review an assignment which does not point out the particulars in which the alleged error consists."

Furthermore, in their brief, appellants do not point out, in a single instance, as to any specification of error, the particulars in which the alleged error consists. It is true appellants contend the instructions of the court "were contradictory, conflicting and erroneous, and the jury was never at any time properly instructed as to the law in said case," but they do not point out wherein or in what particulars the instructions are contradictory, conflicting or erroneous.

After respondent rested appellant B. H. Robinson also testified fully and at great length concerning the alleged oral cancellation of the Memorandum of Purchase by mutual agreement of respondent and appellants, and to conversations had in relation thereto; and, among other things, contradicted respondent's testimony to the effect that there was an agreement or understanding appellants would sign the agreement of July 23, 1945, or become responsible to respondent for the payment of respondent's interest in the Bloxham partnership and potatoes. In fact, it appears both sides, during the trial, let the bars down and that all the material facts and circumstances, as well as documentary evidence, material to the issues formed by the pleadings, including the new issues brought into the case by appellants' answer, went to the jury. Hence, neither party is in a position to complain, nor would any useful purpose be served by reversing the judgment and granting a new trial (Pilkington v. Belson et al., 66 Idaho 724, 168 P.2d 815, 818).

Judgment affirmed. Costs awarded to respondent.

GIVENS, J., and PORTER, D. J., concur.